

MIED ProSe 14 (Rev 5/16)  Complaint for Violation of Civil Rights (Prisoner Complaint)

# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF MICHIGAN

Joshua Levi Alger Sr. 0376096

*(Write the full name of each plaintiff who is filing this complaint. If the names of all the plaintiffs cannot fit in the space above, please write "see attached" in the space and attach an additional page with the full list of names.)*

v.

Heidi Washington et al

*(Write the full name of each defendant who is being sued. If the names of all the defendants cannot fit in the space above, please write "see attached" in the space and attach an additional page with the full list of names. Do not include addresses here.)*

Case: 2:24-cv-11827
Assigned To : Hood, Denise Page
Referral Judge: Altman, Kimberly G.
Assign. Date : 7/16/2024
Description: PRIS ALGER V. WASHINGTON, ET AL (EV)

*(to be filled in by the Clerk's Office)*

Jury Trial:  ☒ Yes  ☐ No
*(check one)*

POOR QUALITY ORIGINAL

# Complaint for Violation of Civil Rights
## (Prisoner Complaint)

## NOTICE

Federal Rules of Civil Procedure 5.2 addresses the privacy and security concerns resulting from public access to electronic court files. Under this rule, papers filed with the court should *not* contain: an individual's full social security number or full birth date; the full name of a person known to be a minor; or a complete financial account number. A filing may include *only*: the last four digits of a social security number; the year of an individual's birth; a minor's initials; and the last four digits of a financial account number.

**Except as noted in this form, plaintiff need not send exhibits, affidavits, grievance or witness statements, or any other materials to the Clerk's Office with this complaint.**

**In order for your complaint to be filed, it must be accompanied by the filing fee or an application to proceed in *forma pauperis*.**

MIED ProSe 14 (Rev 5/16)  Complaint for Violation of Civil Rights (Prisoner Complaint)

## I.    The Parties to This Complaint

### A.    The Plaintiff(s)

Provide the information below for each plaintiff named in the complaint. Attach additional pages if needed.

Name ___Joshua Levi Alger Sr___

All other names by which you have been known:

___Joshua L. Alger___

___Zero___

ID Number ___0376096___

Current Institution ___Gus Harrison Correction facility___

Address ___2727 E. Beecher___

___Adrian, MI 49221___

### B.    The Defendant(s)

Provide the information below for each defendant named in the complaint, whether the defendant is an individual, a government agency, an organization, or a corporation. Make sure that the defendant(s) listed below are identical to those contained in the above caption. For an individual defendant, include the person's job or title (if known) and check whether you are bringing this complaint against them in their individual capacity or official capacity, or both. Attach additional pages if needed.

Defendant No. 1

Name ___Heidi Washington___

Job or Title (if known) ___Director___

Shield Number _____

Employer ___MDOC___

Address ___P.O. Box 30003___

☒ Individual capacity          ☒ Official capacity

MIED ProSe 14 (Rev 5/16)  Complaint for Violation of Civil Rights (Prisoner Complaint)

Defendant No. 2

Name Johnson

Job or Title Assistant Deputy Warden
(if known)

Shield Number

Employer MDOC

Address ARF

☒ Individual capacity    ☒ Official capacity

Defendant No. 3

Name DeRoeck

Job or Title Prison Counselor
(if known)

Shield Number

Employer MDOC

Address ARF

☒ Individual capacity    ☒ Official capacity

Defendant No. 4

Name Roark

Job or Title Resident Unit Manager
(if known)

Shield Number

Employer MDOC

Address ARF

☒ Individual capacity    ☒ Official capacity

3

MIED ProSe 14 (Rev 5/16)  Complaint for Violation of Civil Rights (Prisoner Complaint)

I.      **The Parties to This Complaint**

A.      **The Plaintiff(s)**

Provide the information below for each plaintiff named in the complaint.  Attach additional pages if needed.

Name _____

All other names by which you have been known:

_____

_____

ID Number _____

Current Institution _____

Address _____

_____

B.      **The Defendant(s)**

Provide the information below for each defendant named in the complaint, whether the defendant is an individual, a government agency, an organization, or a corporation. Make sure that the defendant(s) listed below are identical to those contained in the above caption.  For an individual defendant, include the person's job or title (if known) and check whether you are bringing this complaint against them in their individual capacity or official capacity, or both.  Attach additional pages if needed.

Defendant No. 5

Name ___Shane Campbell___

Job or Title (if known) ___Warden___

Shield Number _____

Employer ___MDOC___

Address ___ARF___

[X] Individual capacity        [X] Official capacity

2

MIED ProSe 14 (Rev 5/16)  Complaint for Violation of Civil Rights (Prisoner Complaint)

## II.    Basis for Jurisdiction

Under 42 U.S.C. § 1983, you may sue state or local officials for the "deprivation of any rights, privileges, or immunities secured by the Constitution and [federal laws]." Under *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388 (1971), you may sue federal officials for the violation of certain constitutional rights.

A.    Are you bringing suit against *(check all that apply)*:

☐    Federal officials (a *Bivens* claim)

☒    State or local officials (a § 1983 claim)

B.    Section 1983 allows claims alleging the "deprivation of any rights, privileges, or immunities secured by the Constitution and [federal laws]." 42 U.S.C. § 1983. If you are suing under section 1983, what federal constitutional or statutory right(s) do you claim is/are being violated by state or local officials?

Discrimination for being poor and for
litigating against MDOC
Retaliation
Due process Rights
Cruel and unusual punishment

C.    Plaintiffs suing under *Bivens* may only recover for the violation of certain constitutional rights. If you are suing under *Bivens*, what constitutional right(s) do you claim is/are being violated by federal officials?

4

D.   Section 1983 allows defendants to be found liable only when they have acted "under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia." 42 U.S.C. § 1983.  If you are suing under section 1983, explain how each defendant acted under color of state or local law.  If you are suing under *Bivens*, explain how each defendant acted under color of federal law.  Attach additional pages if needed.

All Defendants are Employed by the State of Michigan

## III.   Prisoner Status

Indicate whether you are a prisoner or other confined person as follows *(check all that apply)*:

☐   Pretrial detainee

☐   Civilly committed detainee

☐   Immigration detainee

☒   Convicted and sentenced state prisoner

☐   Convicted and sentenced federal prisoner

☐   Other *(explain)* _____

## IV.   Statement of Claim

State as briefly as possible the facts of your case.  Describe how each defendant was personally involved in the alleged wrongful action, along with the dates and locations of all relevant events.  You may wish to include further details such as the names of other persons involved in the events giving rise to your claims.  Do not cite any cases or statutes.  If more than one claim is asserted, number each claim and write a short and plain statement of each claim in a separate paragraph.  Attach additional pages if needed.

MIED ProSe 14 (Rev 5/16)  Complaint for Violation of Civil Rights (Prisoner Complaint)

A.    If the events giving rise to your claim arose outside an institution, describe where and when they arose.

B.    If the events giving rise to your claim arose in an institution, describe where and when they arose.

Multiple MDOC facilities the most relevant and recent is Gus Harrison/ARF

C.    What date and approximate time did the events giving rise to your claim(s) occur?

July 1, 2024

6



D. What are the facts underlying your claim(s)? *(For example: What happened to you? Who did what? Was anyone else involved? Who else saw what happened?)*

This claim arrises from the violation of MDOC Policy preventing me from reasonable access to the courts.

The Policy is "Prisoner Mail" 05.03.118 This policy has the section "Writing Materials and Postage".

There are two MDOC policies that govern Postage Loans, one is "prisoner mail" and the other is "Indigent Prisoners".

As I am often denied "indigent" status because I get money deposited on my account even though MDOC Takes all of my funds.

I have had a clash of personalities and much grief at many facilities over trying to receive Standard sized envelopes when I arrive because I usually need to change my address to many Courts, advocates and attorneys.

When I ask Staff how I can get standard size envelopes the usual answer is you have to be on Indigent status.



MIED ProSe 14 (Rev 5/16) Complaint for Violation of Civil Rights (Prisoner Complaint)

**Additional Information:**

This is when I cite the mail policy and then I upset a prison counselor arguing Policy with them and it has lead to misconducts several times. Even more It has prevented me from getting a Job or many other benefits of prison life in control of the P.C. or ARUS.

The policy is not ambiguous and it's pretty clear to me. I am at the point where I don't have any choice except to ask the Court to intervene.

The current facility I am at, ARF, has no procedure to provide standard size envelopes for legal mail in accordance with Policy. The P.C. in my unit refuses to provide them to me at all. I have brought it to his supervisor and to the ADW and the business office and the Warden, The issue was allegedly Brought up to central office by the ADW and there it was confirmed that the

3.

only inmates eligible to get standard size envelopes are those on "Indigent status"

I was directed to get "legal envelopes" from the Law Library. These are large and cost Twice as much or more to send out with only a one page letter. This is unreasonable.

I have attached the most recent MDOC Policy Directive to this complaint.

I asked P.C. DeRoeck for standard size envelopes and he refused to provide them to me saying " buy them on Commissary" I informed him that I had no money, he then said "sign up for indigent," I told Mr. DeRoeck that policy was clear and says the criteria for a standard size envelope is, any one who does not have funds or an envelope and qualifies for a postage loan is to be loaned funds for a standard size envelope. He said "You have to have money or be on the Indigent list" This argument has been

Made at too many facilities by MDOC staff ④
whose Job relies on the proper interpretation
of policy and procedure.

It is hard to accept that I have been
in this position repeatedly over 13 years
and the envelope cost on average 3.5 ¢
as 10 are usually $0.35

The MDOC provided the standard envelopes
free of charge in the past. When they stopped
that, they made a way for anyone who
needs one and lacks funds, to get one.

It is in question at this point Does
The MDOC Policy provide that a standard
size envelope will be made available
to any inmate who does not have
one and does not have the funds
to purchase one?

Does an inmate have to be
on "Indigent status" to be loaned
funds for standard size envelopes?

⑤

1. P.C. DeRoeck and R.U.M. Roeck have been denying me standard size envelopes because I don't have money and because I am not on "indigent status".

2. Heidi Washington is responsible for the policies of MDOC and their proper administration. She refused to reply

3. The Warden S. Campbell tells me to utilize the grievance procedure but he put me on restricted access and his grievance coordinator refuses to give me any grievances when I request them and doesn't acknowledge my requests.

4. ADW Johnson tried to make a remedy and Emailed someone in Lansing in the Central office of the MDOC. They responded that the inmate must be on "indigent status" to get standard size envelopes.

5. The policy is too clear to be misread by all of these college educated proffessionals and Any cost over the envelopes goes against the Prisoner benefit fund and does Not cost the state any thing.

6. It would be simple to come to the conclusion they just don't want me send out my mail. But It still leaves me with no option except the court interprate the policy and settle it all the way from Top down.

⑥

7. MDOC Policy Directive 04-02-120 "Indigent Prisoners" is the only other policy that grants postage loans besides Mail policy 05.03.118.

8. P.D. 05 03 118 section Writing Materials and Postage, Paragraph H, States "in pertinant part " funds to purchase standard size envelopes (eg 3 5/8 x 6 1/2"; 4 1/8 x 9 1/2") shall be loaned to prisoners eligible to receive a postage loan under this section if the prisoner does not have, or does not have the funds to purchase, an envelope.

9. The part that says "under this section" refers to Writing materials and postage section, Not Indigent. Paragraph J makes it clear.

10. Paragraph L and M are what I use for postage loans to send out mail to Courts, lawyers or MDOC.

11. I must wait 30 days to request "indigent status" and may not get it. So this means I won't be getting any envelopes to send out my legal mail.

12. I don't have funds and I don't have an envelope and I am eligible for a postage Loan under paragraph L so clearly I am eligible for a loan of Three and a half cents for an standard size envelope.

13. I don't see how the grievance process would be needed to confirm this. I cannot believe all of the grievances that have been denied on this issue. I also cannot believe that I have to seek relief in a court over it.

14. I interprate the policy to allow me a loan for a standard size envelope when I don't have one and lack funds to buy one to send out legal mail.

15. This means that if I just spent $200.⁰⁰ on commissary and did not buy envelopes and I had no more money on my account, Then suddenly I need to respond to the courts. The MDOC would still have to loan me the money for a standard size envelope to send my legal letter. They would get the money back on my next deposit.

16. The custom is to Give 10 standard size envelopes to an inmate on "indigent status" to send out his 10 monthly letters.

17. Paragraph L states than when prisoner on "indigent status has used all of his postage pursuant to paragraph J he is then eligible for a postage loan under paragraph L. This would then make an indigent status

inmate eligible for a loan to purchase more standard size envelopes.

So I ask the courts to interprate The policy in regards to standard size envelopes and make an order to the affect. Also to make any injunctive relief necessary to cure the misunderstandings that stretch from Prison counselors to the Director of the MDOC

Also To order P.C. DeRoeck to provide me with standard size envelopes to send my legal mail out.

I ask that Director Washington be ordered to send a Department wide Memorandum clarifying it to Every prison and to impliment an operating procedure to ensure that PD 05 03 118 is no longer violated and prison counselors no longer arbitrarily deny inmates standard size envelopes when clearly eligible.

The information is true to the best of my knowledge information and belief.

Joshua L. Ayers Sr. 0376098
7-4-24

MIED ProSe 14 (Rev 5/16)  Complaint for Violation of Civil Rights (Prisoner Complaint)

## V.    Injuries

If you sustained injuries related to the events alleged above, describe your injuries and state what medical treatment, if any, you required and did or did not receive.

Denied my right to access the Courts
Caused excessive Costs on my account.
    Prevent me from Contacting Attorneys for Defense of New charges

## VI.    Relief

State briefly what you want the court to do for you. Make no legal arguments. Do not cite any cases or statutes.  If requesting money damages, include the amounts of any actual damages and/or punitive damages claimed for the acts alleged.  Explain the basis for these claims.

I seek no monetary Relief (Nominal Damages) I request Declatory Relief and preliminary injunctions.
    I want the Court to interprate the mDOC Policy and to make a ruling to the affect. I also want an order to Director Washington for the purpose of Bringing compliance with the policy to all Facilities in mDOC.[8]

MIED ProSe 14 (Rev 5/16)  Complaint for Violation of Civil Rights (Prisoner Complaint)

## VII.   Exhaustion of Administrative Remedies Administrative Procedures

The Prison Litigation Reform Act ("PLRA"), 42 U.S.C. § 1997e(a), requires that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted."

Administrative remedies are also known as grievance procedures.  Your case may be dismissed if you have not exhausted your administrative remedies.

A.   Did your claim(s) arise while you were confined in a jail, prison, or other correctional facility?

☑  Yes

☐  No

If yes, name the jail, prison, or other correctional facility where you were confined at the time of the events giving rise to your claim(s).

B.   Does the jail, prison, or other correctional facility where your claim(s) arose have a grievance procedure?

☑  Yes

☐  No

☐  Do not know

C.   Does the grievance procedure at the jail, prison, or other correctional facility where your claim(s) arose cover some or all of your claims?

☐  Yes

☑  No

☐  Do not know

If yes, which claim(s)?

I am denied the grievance procedure. I have filed at least 10 grievances about this issue in the past all the way to the final step and all were denied.

9

MIED ProSe 14 (Rev 5/16)  Complaint for Violation of Civil Rights (Prisoner Complaint)

D.    Did you file a grievance in the jail, prison, or other correctional facility where your claim(s) arose concerning the facts relating to this complaint?

    ☐    Yes

    ☒    No

If no, did you file a grievance about the events described in this complaint at any other jail, prison, or other correctional facility?

    ☒    Yes

    ☐    No

E.    If you did file a grievance:

    1.    Where did you file the grievance?



MRF    many prisons
JCS
ECF
LRF
uRF

    2.    What did you claim in your grievance?



Violation of policy

    3.    What was the result, if any?

All denied

MIED ProSe 14 (Rev 5/16) Complaint for Violation of Civil Rights (Prisoner Complaint)

4. What steps, if any, did you take to appeal that decision? Is the grievance process completed? If not, explain why not. *(Describe all efforts to appeal to the highest level of the grievance process.)*

Every Step Denied

F. If you did not file a grievance:

1. If there are any reasons why you did not file a grievance, state them here:

Currently I am on grievance Restrictions and have been denied ability to file a grievance since January, 2024

2. If you did not file a grievance but you did inform officials of your claim, state who you informed, when and how, and their response, if any:

I filed a petition for a declatory ruling with the director of MDOC and it was denied.

G. Please set forth any additional information that is relevant to the exhaustion of your administrative remedies.

This same issue has happened all over the MDOC

*(Note: You may attach as exhibits to this complaint any documents related to the exhaustion of your administrative remedies.)*

11

MIED ProSe 14 (Rev 5/16) Complaint for Violation of Civil Rights (Prisoner Complaint)

## VIII. Previous Lawsuits

The "three strikes rule" bars a prisoner from bringing a civil action or an appeal in federal court without paying the filing fee if that prisoner has "on three or more prior occasions, while incarcerated or detained in any facility, brought an action or appeal in a court of the United States that was dismissed on the grounds that it is frivolous, malicious, or fails to state a claim upon which relief may be granted, unless the prisoner is under imminent danger of serious physical injury." 28 U.S.C. § 1915(g).

To the best of your knowledge, have you had a case dismissed based on this "three strikes rule"?

☐    Yes

☒    No

If so, state which court dismissed your case, when this occurred, and attach a copy of the order if possible.

A.      Have you filed other lawsuits in state or federal court dealing with the same facts involved in this action?

☐    Yes

☒    No

B.      If your answer to A is yes, describe each lawsuit by answering questions 1 through 7 below. *(If there is more than one lawsuit, describe the additional lawsuits on another page, using the same format.)*

     1.      Parties to the previous lawsuit

         Plaintiff(s)    _____

         Defendant(s)    _____

     2.      Court *(if federal court, name the district; if state court, name the county and State)*

         _____

     3.      Docket or index number

         _____

12

MIED ProSe 14 (Rev 5/16) Complaint for Violation of Civil Rights (Prisoner Complaint)

4.    Name of Judge assigned to your case

_____

5.    Approximate date of filing lawsuit

_____

6.    Is the case still pending?

☐    Yes

☐    No

If no, give the approximate date of disposition. _____

7.    What was the result of the case? *(For example: Was the case dismissed? Was judgment entered in your favor? Was the case appealed?)*

C.    Have you filed other lawsuits in state or federal court otherwise relating to the conditions of your imprisonment?

☒    Yes

☐    No

D.    If your answer to C is yes, describe each lawsuit by answering questions 1 through 7 below. *(If there is more than one lawsuit, describe the additional lawsuits on another page, using the same format.)*

1.    Parties to the previous lawsuit

Plaintiff(s)   _____

Defendant(s)   _____

2.    Court *(if federal court, name the district; if state court, name the county and State)*

3.    Docket or index number

_____

13

4.      Name of Judge assigned to your case

_____

5.      Approximate date of filing lawsuit

_____

6.      Is the case still pending?

☐      Yes

☐      No

If no, give the approximate date of disposition. _____

7.      What was the result of the case? *(For example:  Was the case dismissed?  Was judgment entered in your favor?  Was the case appealed?)*

_____

_____

## IX.     Certification and Closing

Under Federal Rule of Civil Procedure 11, by signing below, I certify to the best of my knowledge, information, and belief that this complaint: (1) is not being presented for an improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation; (2) is supported by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law; (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and (4) the complaint otherwise complies with the requirements of Rule 11.

### A.     For Parties Without an Attorney

I agree to provide the Clerk's Office with any changes to my address where case-related papers may be served.  I understand that my failure to keep a current address on file with the Clerk's Office may result in the dismissal of my case.

Date of signing: July 4 , 20 24 .

Signature of Plaintiff _____

Printed Name of Plaintiff Joshua Levi Alger-Sr

Prison Identification # 0376096

Prison Address 2727 E. Beecher St

Adrian        MI        49221

          City          State         Zip Code

| MICHIGAN DEPARTMENT OF CORRECTIONS **POLICY DIRECTIVE** | EFFECTIVE DATE 08/01/2023 | NUMBER 05.03.118 |
|---|---|---|
| SUBJECT PRISONER MAIL | SUPERSEDES 05.03.118 (03/01/2018) and DOM 2023-18R3 | |
| | AUTHORITY MCL 791.203; MCL 800.43; Administrative Rules 791.6603, 791.6605 | |
| | PAGE   1   OF   13 | |

## POLICY STATEMENT:

Mail to and from prisoners in a Correctional Facilities Administration (CFA) or Field Operations Administration (FOA) facility shall be processed as set forth in this policy.

## RELATED POLICIES:

| | |
|---|---|
| 04.02.105 | Prisoner Funds |
| 04.02.120 | Indigent Prisoners |
| 04.07.112 | Prisoner Personal Property |
| 05.03.119 | Electronic Messages (e-mail) |
| 05.03.121 | Prisoner-to-Prisoner Mail |

## STATEWIDE OPERATING PROCEDURES:

| | |
|---|---|
| 05.03.118 | Expedited Prisoner Legal Mail and Court Filing Fees Process |
| 05.03.118A | Handling Prisoner Incoming Mail |
| 05.03.118B | Restricted Publication List |

## POLICY:

DEFINITION

A.    Mail - Any written, typed, or printed communication of information, including magazines, catalogs, books, and photographs. Electronic messages (e-mail) shall be handled as set forth in PD 05.03.119 "Electronic Messages (e-mail)."

GENERAL INFORMATION

B.    When in conflict with this policy, PD 05.01.142 "Special Alternative Incarceration Program" controls for prisoners in the Special Alternative Incarceration Program (SAI).

C.    Mail addressed to staff members shall be searched for contraband by Mail Room staff before delivery.

D.    Prisoners shall be permitted to send and receive uncensored mail to or from any person or organization unless the mail violates this policy or Administrative Rule 791.6603. Mail shall not be prohibited solely because its content is religious, philosophical, political, social, sexual, unpopular, or repugnant. Prohibited incoming mail shall be rejected as set forth in the rejected mail portion of this policy.

E.    Prior to rejecting mail for violation of this policy, the prisoner is entitled to a fact-finding hearing conducted pursuant to Administrative Rule 791.3310 unless otherwise specifically stated in this policy.

F.    Law enforcement officials shall be contacted immediately through the appropriate chain of command if mail addressed to or sent by a prisoner contains a controlled substance or evidence of any illegal activity. Upon request of a law enforcement official and approval of the Warden, notices required to be issued and hearings required to be conducted pursuant to this policy may be delayed for a reasonable length of time to allow for a criminal investigation.

G.    An item other than funds that is received through the mail that is alleged to be contraband but does not meet the definition of "mail" pursuant to this policy, shall be treated as property and processed as set forth in

| DOCUMENT TYPE | EFFECTIVE DATE | NUMBER | |
|---|---|---|---|
| POLICY DIRECTIVE | 08/01/2023 | 05.03.118 | PAGE 2 OF 13 |

PD 04.07.112 "Prisoner Personal Property." However, a prisoner may receive a single stamped self-addressed envelope that is sent in the mail from an attorney, a court, or a legitimate religious organization, provided the envelope is a standard white envelope and does not include address labels, stickers, or any other item affixed to it. The postage must be metered or "stamped postage" as sold by the United States Postal Service; a postage stamp affixed with adhesive or tape is prohibited. Additionally, free promotional items (e.g., compact discs; make-up samples) that are not authorized property pursuant to PD 04.07.112 that are attached to a publication, and fasteners holding mail together, may be removed and discarded upon receipt by the facility without notice to the prisoner if the item can be easily removed without risk of damage to the publication. If a fastener is removed that was holding mail together, the mail shall be securely sealed prior to delivery to the prisoner. Funds received through the mail shall be processed as set forth in PD 04.02.105 "Prisoner Funds."

## WRITING MATERIALS AND POSTAGE

H. Each correctional facility shall have available a reasonable quantity of free writing materials for use by prisoners; i.e., graphite pencils or blue/black ink pens; white paper (for example, multipurpose "copy" paper). Paper provided free to a prisoner does not need to be lined or of typing quality. Funds to purchase standard-size envelopes (e.g., 3 5/8" x 6 1/2"; 4 1/8" x 9 1/2") shall be loaned to prisoners eligible to receive a postage loan under this section if the prisoner does not have, or does not have the funds to purchase, an envelope.

I. Additional writing materials, including typing paper for legal work, carbon paper, envelopes, and postage shall be available for prisoner purchase in correctional facilities as set forth in PD 04.02.130 "Prisoner Store." Funds to purchase a reasonable quantity of carbon paper and to purchase over-sized envelopes of a sufficient size to mail legal materials (e.g., 10" x 15"; 15" x 20") to a court, an attorney, or a party to a lawsuit due to pending litigation, including the initial filing and service of a lawsuit, shall be loaned to a prisoner who lacks sufficient funds to purchase such items in the prisoner store. The prisoner must provide proof that the items are for litigation purposes. The funds shall be loaned by the Prisoner Benefit Fund (PBF). The cost of envelopes and carbon paper provided shall be considered an institutional debt and collected as set forth in PD 04.02.105 "Prisoner Funds." Funds collected to repay a loan from a PBF shall be returned to that PBF.



J. A prisoner on indigent status pursuant to PD 04.02.120 "Indigent Prisoners" shall be loaned funds for postage as set forth in that policy.

K. Blind or other disabled prisoners may be eligible to send mail free of postage in accordance with 39 USCA Section 3403 or 3404.

L. Funds for additional first-class postage shall be loaned to prisoners who lack sufficient funds to send mail to a court, an attorney, or a party to a lawsuit due to pending litigation. This includes the initial filing and service of a lawsuit. The cost of certified mail shall be loaned only if the prisoner is required by court order to use certified mail (e.g., an order denying the prisoner's motion for substituted service by first-class mail). Postage shall be loaned to prisoners on indigent status pursuant to this paragraph only after the prisoner has used all postage available pursuant to Paragraph J.

M. Funds for additional first-class postage shall also be loaned to prisoners who lack sufficient funds to mail a grievance or a Class II and Class III Misconduct Appeal (CSJ-274) to another facility or to mail a Step III grievance or a Request for Rehearing to Central Office. Funds shall be loaned for these purposes only if there is not a Department of Technology, Management and Budget (DTMB) interdepartmental mail run available and the mail must be posted before the prisoner will receive postage pursuant to Paragraph J.

N. A prisoner requesting a postage loan pursuant to Paragraph L or M may be required to present the mail unsealed to staff to verify that it qualifies for the loan. In such cases, staff shall read only those sections of the mail that are necessary to make this determination. The mail shall not be read in its entirety. The cost of any postage or envelopes loaned to the prisoner shall be borne by the PBF. Any funds loaned for postage or envelopes shall be treated as an institutional debt and collected as set forth in PD 04.02.105 "Prisoner Funds." Funds collected to repay a loan from a PBF shall be returned to that PBF.

O. Prisoners shall not be loaned postage for any reason other than as set forth above.

| DOCUMENT TYPE | EFFECTIVE DATE | NUMBER | |
|---|---|---|---|
| POLICY DIRECTIVE | 08/01/2023 | 05.03.118 | PAGE 3 OF 13 |

PRISONER OUTGOING MAIL

P.    Each facility shall offer prisoners outgoing mail service through the U.S. Postal Service. The facility may also offer outgoing mail service for oversize or overweight mail, including packages, through a legitimate alternate carrier. Except as set forth in Paragraphs J through N, prisoners shall be required to pay the cost of postage for any mail service used.

Q.    A prisoner shall be permitted to send certified and international mail, and mail that weighs more than one ounce, via disbursement. Mail that a prisoner is sending via disbursement that is clearly identified as being to a court, an attorney, or a party to a lawsuit due to pending litigation, including the initial filing and service of a lawsuit, shall be processed as soon as possible. This includes mail being sent via disbursement to a court, an attorney, or a party to a lawsuit pursuant to Paragraph J or L. An expedited legal mail process for such mail shall be established by the CFA Deputy Director. The expedited legal mail process also shall be available to prisoners to send mail to a court or court reporter to request a transcript of the prisoner's court proceeding and to legal service organizations (e.g., American Civil Liberties Union, State Appellate Defender Office, Michigan Appellate Assigned Counsel System). The prisoner may be required to present the mail unsealed to staff to verify that it qualifies for expedited legal mail handling. In such cases, staff shall read only those sections of the mail that are necessary to make this determination. The mail shall not be read in its entirety. If it is determined that mail does not qualify for expedited handling, it shall be returned to the prisoner.

R.    Prisoners may use DTMB interdepartmental mail runs, in facilities where such service is available, to send postage-free mail to staff in other facilities serviced by interdepartmental mail runs and to Central Office. DTMB interdepartmental mail runs shall not be used by prisoners for any other purpose. Mail designated for delivery through a DTMB interdepartmental mail run in violation of this policy shall be returned to the prisoner consistent with Paragraph X and not processed for mailing.

S.    There is no limit on the amount of outgoing mail a prisoner may send, except that prisoners are allowed to purchase and possess envelopes only in the quantities set forth in PD 04.07.112 "Prisoner Personal Property" and PD 04.02.130 "Prisoner Store." Outgoing mail must contain the prisoner's first and last name and prisoner number, and the name and address of the facility at which the prisoner is housed as the return address on the envelope. If the mail does not contain this information, the mail shall be returned to the prisoner to be corrected. However, mail that does not contain at least the prisoner's name and number may be destroyed.

T.    Outgoing mail of prisoners in segregation shall not be sealed and shall be inspected by staff prior to mailing. However, mail that is clearly identified as being sent to the business address of one of the following may be sealed by the prisoner and shall not be opened or otherwise inspected by staff prior to mailing unless the entity has specifically objected in writing to receiving mail from the prisoner sending the mail, and subject to Administrative Rule 791.6603(5) and Paragraphs N, Q, and X:

    1.    A licensed attorney, including the Attorney General, an assistant attorney general, a prosecuting attorney, and an attorney of a legitimate legal service organization (e.g., American Civil Liberties Union, State Appellate Defender Office, Michigan Appellate Assigned Counsel System).

    2.    State or federal courts.

    3.    Federal, state, or local public officials.

    4.    The Director or any other Central Office staff.

    5.    Staff at the facility in which the prisoner is segregated.

    6.    Representatives of the news media, being persons who are primarily employed to gather or report news for any of the following:

        a.    A newspaper of general circulation in the community in which it publishes;

        b.    A magazine of statewide or national circulation that is sold at newsstands or by mail to the general public;

| DOCUMENT TYPE | EFFECTIVE DATE | NUMBER | |
|---|---|---|---|
| POLICY DIRECTIVE | 08/01/2023 | 05.03.118 | PAGE 4 OF 13 |

     c.     A radio or television station that is licensed by the Federal Communications Commission.

    7.     The Office of the Legislative Corrections Ombudsman.

    8.     A consulate or embassy.

    9.     Disability Rights Michigan (DRM)

    10.    The Michigan Department of Civil Rights (MDCR).

    11.    Settlement Monitors.

U.    General population prisoners shall be permitted to send sealed mail, subject to Administrative Rule 791.6603(5) and Paragraphs N, Q, and R. However, outgoing mail may be opened and inspected if it is determined by the Warden or designee that there are reasonable grounds to believe the mail is being sent in violation of Administrative Rule 791.6603(5). However, mail that is clearly identified as being sent to the business address of one of the following may be sealed by the prisoner and shall not be opened or otherwise inspected by staff prior to mailing, unless the entity has specifically objected in writing to receiving mail from the prisoner sending the mail or as required pursuant to Paragraphs N, Q, or X:

    1.     A licensed attorney; this includes the Attorney General, an assistant attorney general, a prosecuting attorney, and an attorney of a legitimate legal service organization (e.g., American Civil Liberties Union, State Appellate Defender Office, Michigan Appellate Assigned Counsel System).

         Note: If staff are unsure if the mail is from a legitimate legal service organization, they may contact the CFA Deputy Director or designee in consultation with the Office of Legal Affairs Administrator.

    2.     State or federal courts.

    3.     Federal, state, or local public officials.

    4.     The Director or any other Central Office staff.

    5.     Staff at the facility in which the prisoner is housed.

    6.     The Office of the Legislative Corrections Ombudsman.

    7.     A consulate or embassy.

    8.     Disability Rights Michigan (DRM).

    9.     Michigan Department of Civil Rights (MDCR).

    10.    Settlement Monitors.

V.    A prisoner is prohibited from sending mail addressed to anyone who has objected to receiving mail from the prisoner. This only applies after the prisoner has been notified of the objection. A prisoner who continues to send mail to a person who has objected to receiving mail from that prisoner after receiving notice of the objection also may be subject to discipline in accordance with PD 03.03.105 "Prisoner Discipline."

W.    Except as set forth in Paragraph F, if it is determined that a prisoner's outgoing mail may violate Administrative Rule 791.6603(5) and that the mail therefore will not be sent, the prisoner shall be issued a Notice of Intent to Conduct an Administrative Hearing (CSJ-282) and a hearing shall be conducted pursuant to Administrative Rule 791.3310. The hearings officer shall not be the person who issued the notice. If a violation is established at the hearing, and the mail appears to be in violation of state or federal law, the Emergency Management Section (EMS) Manager or designee shall be notified and the mail shall be turned over to the facility Inspector. The Inspector, in consultation with the EMS Manager or designee, shall determine if the mail needs to be turned over to law enforcement authorities.

| DOCUMENT TYPE | EFFECTIVE DATE | NUMBER | |
|---|---|---|---|
| POLICY DIRECTIVE | 08/01/2023 | 05.03.118 | PAGE 5 OF 13 |

X.  If it is determined that a prisoner's outgoing mail cannot be processed due to insufficient postage, failure of the prisoner to sign a disbursement authorization, mail returned as undeliverable, or other reason unrelated to the content of the mail, the mail shall be treated as incoming mail. Legal mail and mail to an embassy or consulate that cannot be processed for any of these reasons shall receive special handling as outlined in Paragraphs HH through KK of this policy prior to its return to the prisoner.

## PRISONER INCOMING MAIL

Y.  Staff shall only accept mail that has been delivered from a legitimate commercial carrier (e.g., U.S. Postal Service, United Parcel Service) or through DTMB interdepartmental mail runs as provided for in this policy. Staff shall not accept mail for prisoners left at the facility by members of the public, including prisoner family members and visitors, except that attorneys may be permitted to deliver legal mail to prisoners pursuant to standards issued by the CFA Deputy Director.

Z.  Prisoners shall not be permitted to receive mail identified as being sent "bulk rate" or "pre-sorted standard," as indicated by the U.S. Postal Service marking, unless it was sent from a federal or state agency or a court, is a catalog allowed pursuant to Paragraph BB, is a publication received from the publisher or an authorized vendor pursuant to Paragraph AA, or is correspondence course material approved pursuant to PD 05.02.119 "Correspondence Courses." All other mail identified by the U.S. Postal Service marking as being sent "bulk rate" or "pre-sorted standard" may be discarded upon receipt by the facility without notice to the prisoner.

AA.  Prisoners shall be permitted to receive books, magazines, and other publications only if:

1.  The book, magazine, or other publication is ordered by a member of the public from an internet vendor identified in Attachment A or from the publisher and sent directly to the prisoner by the vendor or publisher,

2.  The book, magazine, or other publication is ordered by the prisoner from a vendor identified in Attachment B or from the publisher and sent directly to the prisoner from the vendor or the publisher, or

3.  The prisoner is approved to take a correspondence course pursuant to PD 05.02.119 "Correspondence Courses," and the publication is sent directly from the approved correspondence school.

4.  The publication is a government publication sent from the United States Congress and/or the Michigan Legislature.

All prisoner orders must be through established facility ordering procedures. Under no circumstances shall prisoners in a correctional facility be permitted to order a publication from an internet vendor.

BB.  Prisoners shall not be permitted to receive retail or wholesale catalogs through the mail, except that a prisoner who is permitted to possess a catalog pursuant to PD 04.07.112 "Prisoner Personal Property" may receive a catalog sent directly from a vendor approved at that facility as a source of allowable prisoner personal property. Unauthorized catalogs may be discarded upon receipt by the facility without notice to the prisoner.

CC.  Unless transmitted by or on behalf of the Department, mail received by staff for a prisoner via facsimile machine or e-mail may be destroyed upon receipt instead of being delivered to the prisoner, unless it is clear from the mail that it conveys emergency information (e.g., imminent death of family member) and the Warden authorizes delivery. If the mail is not delivered and the sender's address is sufficiently identified in the transmittal, the sender shall be notified by mail that the mail received via facsimile was not delivered due to the method of transmission. Subsequent transmittals by the same sender may be destroyed without notification to the sender.

DD.  All incoming mail for prisoners must be clearly identified with the recipient's name and prisoner number to ensure proper delivery. Incoming mail that does not clearly identify the recipient may receive delayed processing or, if the recipient cannot be adequately identified, may be returned to the sender.

| DOCUMENT TYPE | EFFECTIVE DATE | NUMBER | |
|---|---|---|---|
| POLICY DIRECTIVE | 08/01/2023 | 05.03.118 | PAGE 6 OF 13 |

EE. All incoming mail that does <u>not</u> receive special handling pursuant to Paragraphs HH through KK shall be opened in one location at each facility and inspected at that location to determine if it contains money, controlled substances, or other physical contraband. All physical contraband shall be confiscated prior to delivery of the mail to the prisoner. The mail's written content also shall be skimmed, and if it appears from skimming the content that the mail may violate this policy, the item shall be read to determine if it is allowed.

FF. Any incoming mail that does not require special handling, including photographs, that staff determine a prisoner may receive shall be photocopied and the photocopies placed in an envelope provided by the Department. After the mail has been photocopied, mail room staff shall ensure all of the pages are accounted for and each photocopied page is clear and legible. Prisoners shall notify staff immediately if the mail they received is not legible or they believe it to be incomplete. Staff shall then review the mail to confirm that the mail the prisoner received is clear, legible, and complete. Staff shall only photocopy the mail again if the mail is unclear, illegible, or incomplete. The front of the envelope the mail came in shall also be photocopied and placed in the envelope, so the prisoner has the return address of the sender.

GG. After the original mail and envelope has been photocopied, it shall be retained for 14 calendar days. After 14 calendar days, the original mail and original envelope shall be placed in a locked bin for shredding or immediately shredded by staff if the locked bin is unavailable. Original vital documents that are mailed to a facility shall not be shredded and shall be forwarded to the Records Office. Original photographs that are mailed to a prisoner may be returned to the sender at the prisoner's expense after they are photocopied. Funds shall not be loaned for this purpose. The prisoner shall notify mail room staff within 14 calendar days of receipt of the photograph if they want to return the original photograph to the sender. Mail room staff shall process incoming publications (e.g., books, magazines, newspapers) in accordance with this policy directive. Receipts from publication purchases shall be photocopied, and the prisoner shall only receive the photocopied receipt. The original receipt shall be shredded in the same manner as other original mail.

## MAIL REQUIRING SPECIAL HANDLING

HH. Incoming mail to a prisoner from an embassy or consulate shall receive special handling.

II. A prisoner may have their incoming legal mail receive special handling by submitting a completed Mail Requiring Special Handling form (CSJ-246) to the facility's mailroom supervisor or designee. Only mail received directly from an attorney or a law firm, a legitimate legal service organization, the Department of Attorney General, a prosecuting attorney's office, a court, a clerk of the court, a Friend of the Court office, the Office of the Legislative Corrections Ombudsman, a Consulate or Embassy, Disability Rights Michigan (DRM), Michigan Department of Civil Rights (MDCR), or settlement monitors is considered legal mail, and only if the mail is clearly identified on the face of the envelope as being from one of the above. It is not sufficient for the envelope to be simply marked "legal mail." Staff shall make every effort to confirm the address on the mail is truly the address of the sender.

JJ. Each prisoner received at a reception facility shall be asked if they want their legal mail to receive special handling. If the prisoner does not request special handling at that time, they shall be told that they may submit a request to the institutional mailroom supervisor or designee at any time during their incarceration by completing a Mail Requiring Special Handling form (CSJ-246).

KK. A request for special handling of legal mail shall be entered on the Department's computerized database (e.g., OMNI) within two business days after receipt. A prisoner shall not be required to renew their request upon transfer. Appropriate facility staff shall be responsible for determining if there is a request for special handling of legal mail when processing mail. Legal mail shall receive special handling only if requested by a prisoner as set forth in Paragraphs GG and HH.

## Processing Mail Requiring Special Handling

LL. When mail requiring special handling is received at a facility, mailroom staff shall confirm the mailing with the identified sender at a verified telephone number (e.g., Michigan Bar Journal). If confirmed, the mail shall then be processed with special handling. If the identified sender did not send the mail, an e-mail shall be sent to the identified sender confirming this information. A copy of the e-mail shall be retained with the log identified in Paragraph LL. In such cases, the mail will be processed in accordance with this policy but will not receive special handling. If the identified sender cannot be reached at the verified telephone number to confirm that

| DOCUMENT TYPE | EFFECTIVE DATE | NUMBER | |
|---|---|---|---|
| POLICY DIRECTIVE | 08/01/2023 | 05.03.118 | PAGE 7 OF 13 |

the mail requiring special handling was sent by them, staff shall hold the mail for 15 business days. During the 15-business day period, staff shall call the verified telephone number at least twice a week (not on the same day) to try to verify that the mail was sent from the identified sender. The staff member making the call shall leave a message if the sender has an answering machine/voicemail. Staff shall also attempt to contact the identified sender via e-mail at least once a week during the 15-business day period if their e-mail address is available. Staff shall check www.michbar.org to attempt to find the e-mail address of the identified sender. All attempts to contact the identified sender shall be documented. If the identified sender does not respond within 15-business days, mailroom staff shall return the mail to the sender.

MM. Incoming mail receiving special handling shall be opened and inspected for money, controlled substances, and other physical contraband in the prisoner's presence. The content of the mail shall not be read or skimmed. All physical contraband shall be confiscated, and non-contraband mail shall be delivered to the prisoner in accordance with this policy. Mail opened in the prisoner's presence that clearly does not qualify for special handling shall be returned to the mailroom for processing in accordance with this policy. If a prisoner receives mail that requires special handling but chooses not to come to the designated area in the facility to have the mail opened in front of them, the mail shall be returned to the sender.

NN. A log shall be maintained to document the delivery of mail receiving special handling. The log shall include the date the mail was received in the mailroom, the sender's name, the prisoner's name and number, the date the mail was given to the prisoner, and the prisoner's signature acknowledging receipt of the mail. If the prisoner chooses not to sign or accept the mail, that shall be documented, and the mail delivered to the prisoner.

SPECIAL HANDLING OF MAIL FROM THE OFFICE OF THE LEGISLATIVE CORRECTIONS OMBUDSMAN, DISABILITY RIGHTS MICHIGAN (DRM), MICHIGAN DEPARTMENT OF CIVIL RIGHTS (MDCR), AND SETTLEMENT MONITORS

OO. Mail from the Office of the Legislative Corrections Ombudsman, Disability Rights Michigan (DRM), Michigan Department of Civil Rights (MDCR), and settlement monitors shall receive special handling even if the prisoner did not request special handling.

PROHIBITED INCOMING MAIL

PP. An incoming envelope received directly from an attorney or law firm, a legitimate legal service organization, a legal service organization, the Department of Attorney General, a prosecuting attorney's office, a court, a clerk of the court, a Friend of the Court office, or the Office of the Legislative Corrections Ombudsman, a Consulate or Embassy, DRM, MDCR, or settlement monitors shall be discarded only after a copy of the envelope is made showing the name and address of the sender and postmark. The copy shall be delivered to the prisoner instead of the original incoming envelope and its content processed in accordance with this policy.

QQ. Prisoners are prohibited from receiving mail that may pose a threat to the security, good order, or discipline of the facility, facilitate or encourage criminal activity, or interfere with the rehabilitation of the prisoner. The following pose such risks under all circumstances and therefore shall be rejected:

1. Mail containing specific information regarding the manufacture, or operation of electronic security systems, weapons, explosives, ammunition, or incendiary devices.

2. Mail depicting or describing procedures for manufacturing poisons, alcohol, or controlled substances.

3. Mail violating, advocating, or promoting the violation of state or federal laws, or providing instruction on how to violate state or federal laws. This includes mail advocating or promoting the filing of a false or fraudulent Uniform Commercial Code (UCC) financing statement in violation of MCL 440.9501, mail encouraging or providing instruction for filing fraudulent state or federal forms, or mail with information on how to set up a fraudulent business enterprise.

4. Mail advocating or promoting violence, group disruption, or insurrection.

5. Mail describing or depicting acts of sadism, masochism, bondage, necrophilia, or bestiality, or describing, depicting, or appearing to promote sexual acts involving children. This does not include small advertisements in a publication sent directly from the publisher or an authorized vendor except if

| DOCUMENT TYPE | EFFECTIVE DATE | NUMBER | |
|---|---|---|---|
| POLICY DIRECTIVE | 08/01/2023 | 05.03.118 | PAGE 8 OF 13 |

the advertisement depicts or appears to promote sexual acts involving children.

6. Mail advocating racial supremacy or ethnic purity or attacking a racial or ethnic group that is reasonably likely to promote or cause violence or group disruption in the facility.

7. Mail providing detailed instruction in the martial arts, such as judo, karate, aikido, kendu, kung fu, and similar techniques.

8. Subject to Paragraph AA, a book, magazine, newspaper, or other publication that is not received directly from the publisher, an Internet vendor identified on Attachment A, a vendor identified on Attachment B, or, if the prisoner is approved to take a correspondence course pursuant to PD 05.02.119 "Correspondence Courses," directly from the approved correspondence school. This does not apply to an article or a few pages, or copies of a few pages, from a publication that may be included with a letter or other mail, unless it is reasonably believed to be an attempt to circumvent this restriction. Retail and wholesale catalogs are specifically addressed in Paragraph BB.

9. A used publication.

10. A publication received on a credit basis (e.g., from a book club). This does not apply if the publication is completely pre-paid and receipt does not obligate the prisoner to make future credit purchases.

11. Mail containing a provocative or scurrilous attack on any religion or religious group. This does not include a thoughtful and rational discussion of religious beliefs or differences between religions.

12. Nude photographs (including drawings and images), except if included in a publication sent directly from the publisher or an authorized vendor. Nude photographs are defined as any photograph exposing the buttocks (including photographs of an individual wearing a thong with the buttocks visible), pubic area or genitalia, or, except if a baby or infant, the female breast below the top of the areola. This includes exposure through "see through" materials.

13. Photographs (including drawings and images) depicting actual or simulated sexual acts by one or more persons. This includes photographs in a publication sent directly from the publisher or a vendor authorized by the facility.

14. Official photographs of a victim at a crime scene or depicting injuries to a victim sustained as a result of a crime that were taken for purposes of criminal investigation or prosecution. This includes photographs of the autopsy of a victim.

15. Mail depicting, encouraging, or describing methods of escape from a correctional facility. This includes blueprints, drawings, or similarly detailed descriptions of correctional facilities, courthouses and medical care facilities, and detailed roadmaps of Michigan, any state-contiguous to Michigan, or the Province of Ontario, Canada.

16. Mail written in code, or in a foreign language that cannot be screened by facility staff to the extent necessary to conduct an effective search. However, correspondence written in a foreign language shall be processed as set forth in Paragraphs XX through ZZ of this policy. This does not include dictionaries, language learning publications, and grammar/phrase books written in either a foreign language, American Sign Language (ASL), or braille.

17. Mail that is known to contain personal information about an employee or an employee's family, unless it is sent by the employee and the employee is related to the prisoner by blood or marriage, or is provided with the approval of the Administrator of the Office of Legal Affairs or designee regarding pending litigation. This includes personal information published in newspapers.

18. Mail for the purpose of operating a business enterprise while within the facility. This does not apply to mail regarding the operation of a business enterprise after release.

19. Mail that is restricted or prohibited under a court order (e.g., personal protection order).

| DOCUMENT TYPE | EFFECTIVE DATE | NUMBER | |
|---|---|---|---|
| POLICY DIRECTIVE | 08/01/2023 | 05.03.118 | PAGE 9 OF 13 |

20. Mail violating postal regulations.

21. Mail containing threats.

22. Voluminous mail (i.e., greater than 12 single sided pages in legible font, which is the equivalent of a two-ounce first class postage stamp).

RR. Mail that prevents an effective search may provide a means of introducing controlled substances, for example Suboxone or Fentanyl, or other contraband that poses a threat to the security, good order, or discipline of the facility. The following prevents an effective search and therefore shall be rejected, except as set forth in Paragraph SS:

1. Mail that is taped, pasted, or otherwise joined or fastened to another item. Mail shall not be rejected for a fastener that may be removed as set forth in Paragraph G.

2. Mail that includes the use of crayon, non-graphite pencil, highlighter, or other markers on the paper.

3. Mail that includes glitter, lipstick marks, unusual stains, body fluids, perfumes, oils, or other foreign or unknown substance on the paper.

4. Mail, including photographs and pictures, received on non-white, heavy weight (i.e., greater than 24 pound), construction paper, card stock, or photo paper. This does not include white lined paper.

5. Mail with stamps, stickers, labels, or anything affixed to the paper with an adhesive.

SS. A publication shall not be rejected under Paragraph RR if it is received directly from the publisher or an authorized vendor. Mail received directly from the following also shall not be rejected under Paragraph RR:

1. A correspondence school under PD 05.02.119 "Correspondence Courses."

2. A governmental agency conducting official business with the prisoner, including but not limited to, a court, a Clerk of the Court, a Friend of the Court office, and the office of the Legislative Corrections Ombudsman, a Consulate or Embassy, Disability Rights Michigan (DRM), or Michigan Department of Civil Rights (MDCR).

3. An attorney, a law firm, or a legal service organization conducting official business with the prisoner.

TT. Mail depicting a sign or symbol of a security threat group designated pursuant to PD 04.04.113 "Security Threat Groups" shall be evaluated on a case-by-case basis in order to determine if the sign or symbol is believed to pose a threat to the security, good order, or discipline of the facility, facilitate or encourage criminal activity, or interfere with the rehabilitation of the prisoner.

UU. Prisoners are prohibited from receiving photo collages through the mail.

VV. If any written material, picture, or photograph contained within a publication is believed to be in violation of this policy, the entire publication shall be rejected. However, if the written material, picture or photograph is in a portion of a newspaper that is not stapled or otherwise affixed to the rest of the newspaper, only that portion of the section (i.e., only the page that the written material, picture, or photograph is on and any connected pages) shall be removed and rejected. The rest of the newspaper shall be delivered to the prisoner.

NOTE: Only full pages containing prohibited content and the connected pages may be removed. Prohibited articles shall not be torn or cut out of the newspaper.

CORRESPONDENCE WRITTEN IN A FOREIGN LANGUAGE OR BRAILLE

WW. Incoming correspondence mailed to a prisoner that is written in braille shall be processed as a foreign language as set forth in Paragraphs YY - ZZ If it is determined that the content of the mail does not violate this policy directive. If a blind prisoner requires mail to be written in Braille, they may contact the Worksite Offender ADA Coordinator and request a Special Accommodation Notice (SAN) to possess mail that is

| DOCUMENT TYPE | EFFECTIVE DATE | NUMBER | |
|---|---|---|---|
| POLICY DIRECTIVE | 08/01/2023 | 05.03.118 | PAGE 10 OF 13 |

written in Braille on heavy weight paper. the prisoner requiring braille shall be allowed to possess the mail if they have a SAN. Learning material for Braille may be ordered and possessed in accordance with Attachment B "Authorized Vendors for Prisoner Purchases of Publications."

XX.   Incoming correspondence mailed to a prisoner that is written in a foreign language shall not be interpreted or translated by Department staff or prisoners.

YY.   Wardens must retain the services of one or more vendors to provide an English summary of the content of correspondence received by prisoners that is written in a foreign language and, if necessary, a detailed English translation. The summarization and translation services shall be retained via a purchase order within the facility's delegated authority. These services shall be provided in a prompt manner but not to incur overtime charges for expedited services. Summarization and translations are not required for electronic messages forwarded through the Department's contracted vendor. The use of the vendor shall be at the Department's expense.

ZZ.   If correspondence addressed to a prisoner is written in a foreign language, staff designated by the Warden shall contact one or more of the facility's vendors for summarization and translation services and request a verbal English summarization of the correspondence. Appropriate facility staff shall prepare a written summarization using the Mailroom Foreign Language Summarization Log (CAJ-1032), making a specific notation of any potential violations of policy. If no violation of policy is noted, the item shall be promptly delivered to the prisoner. All pages of the correspondence shall be stamped "Translation Approved" and dated so that the correspondence will not be confiscated upon inspection or when the prisoner is transferred to another facility. If the correspondence is believed to be in violation of policy, staff shall initiate the mail rejection process as outlined in this policy.

REJECTED MAIL

AAA.   Whenever mail addressed to a prisoner is opened and believed to be in violation of policy, a Notice of Package/Mail Rejection (CSJ-316) shall be completed and promptly sent to the prisoner, except as set forth in Paragraph F. The Notice shall specify in detail the specific item/content believed to be in violation of this policy and why the item/content is believed to be in violation of policy. A copy of the Notice shall also be sent to the person or entity that sent the mail if a return address is identified.

BBB.   Unless the prisoner waives their right to a hearing in writing by choosing an allowable disposition for the item, and the prisoner and staff agree on the appropriate disposition of the item, a prompt hearing shall be conducted pursuant to Administrative Rule 791.3310 to determine if the mail violates policy for the reason(s) identified in the Notice of Package/Mail Rejection (CSJ-316) and, if so, the appropriate disposition of the mail. The hearings officer shall not be the person who issued the Notice.

CCC.   If a hearing is conducted, an Administrative Hearing Report (CSJ-144) shall be completed by the hearings officer. The prisoner shall be provided the opportunity to review the mail or a copy of the mail at the hearing unless the review itself would threaten the order and security of the facility, encourage or provide instruction in criminal activity, or interfere with the rehabilitation of the prisoner. If the prisoner is not permitted to review the mail or a copy of the mail at the hearing, the hearings officer shall state the reason for that decision on the Administrative Hearing Report. If a summarization was provided for correspondence written in a foreign language, the hearings officer shall review the summarization prior to issuing a finding. The hearings officer may request a full written translation of the correspondence if necessary to issue the finding.

DDD.   If the hearings officer finds that the mail does not violate this policy, the mail shall be returned to the mailroom to determine if any other violations of policy exist. If other violations exist, the mail shall be processed as set forth in Paragraph AAA through CCC. If there is no other reason to reject the mail pursuant to this policy, the mail shall be promptly delivered to the prisoner unless it is determined by the Warden or designee that the hearings officer's decision was not supported by policy and a rehearing is ordered.

EEE.   If the hearings officer finds that the mail violates this policy, the hearings officer shall determine the appropriate disposition of the mail as set forth in Paragraph NNN. The disposal option chosen by the hearings officer shall be specifically stated on the Administrative Hearing Report. The hearings officer may take into consideration the prisoner's choice of disposition in making that determination but shall identify only one disposal option on the hearing report.

| DOCUMENT TYPE | EFFECTIVE DATE | NUMBER | |
|---|---|---|---|
| POLICY DIRECTIVE | 08/01/2023 | 05.03.118 | PAGE 11 OF 13 |

FFF.   Whenever a hearings officer finds that a newspaper, magazine, book, or other publication violates this policy based on its written or pictorial content, the publication shall be submitted in a timely manner to the Warden along with a copy of the Notice and the Administrative Hearing Report. If the Warden does not agree that the publication violates this policy based on its content, that decision shall be noted on the Administrative Hearing Report and the publication returned to the mailroom for a second review to see if there are policy violations not found during the first review. If after the second review the Warden does not agree that the publication violates this policy based on its content, that decision shall be noted on the Administrative Hearing Report and the publication promptly delivered to the prisoner with a copy of the Warden's decision. If the Warden agrees that the publication violates this policy based on its written content, they shall proceed as set forth in Paragraph GGG. In all other cases involving the pictorial content of a publication, the Warden shall make the final decision. The Warden may maintain a list of publications rejected under their authority due to pictorial content.

## RESTRICTED PUBLICATIONS LIST

GGG.   If the Warden concurs with the hearings officer's decision that a publication violates this policy based on its written content, the Warden or designee shall promptly submit copies of the Notice, the Administrative Hearing Report, the publication's cover, and a representative sampling of the specific sections of the publication found to be in violation of this policy to the CFA Deputy Director or designee for a final determination whether the publication violates this policy. The Warden or designee shall be notified of the decision. The Warden shall ensure that the prisoner is notified of the decision and, if the CFA Deputy Director or designee does not agree that the publication violates this policy, ensure that the publication is promptly given to the prisoner.

HHH.   If the CFA Deputy Director or designee agrees that a publication violates this policy for the reason(s) identified in the Administrative Hearing Report, it shall be placed on the Restricted Publications List. The Restricted Publications List shall be maintained by the CFA Deputy Director or designee and be available to all staff on the Document Access System (DAS). A copy of the Restricted Publications List shall also be available in the Library and on the Department's website.

III.   Once a publication is placed on the Restricted Publications List, it shall be rejected at all facilities without the need for a hearing to determine the basis for the rejection removed, unless otherwise indicated on the Restricted Publication List. If a Warden maintains a list of publications rejected under their authority due to pictorial content pursuant to Paragraph FFF, a publication placed on that list also shall be rejected at that facility without the need for a hearing. However, a Notice of Package/Mail Rejection (CSJ-316) shall be completed whenever a publication on the Restricted Publications List or the list maintained by the Warden is subsequently received for a prisoner. Copies of the Notice shall be sent to the prisoner and to the person or entity that sent the publication, if a return address is identified. The Notice shall identify the publication and state that the publication will not be delivered because it is on the Restricted Publications List or the list maintained by the Warden, as applicable.

JJJ.   A Literary Review Committee (LRC) shall be developed by the CFA Deputy Director or designee. The LRC shall review the list at least annually to determine if there is anything that needs to be taken off the list. A specific item may be reviewed by the LRC upon request of an Executive Policy Team (EPT) member. The LRC shall be comprised of a Librarian, Chaplain, Mailroom employee, an employee from the Emergency Management Section (EMS) and an employee from the Education Section as determined by the CFA Deputy Director.

## APPEAL OF REJECTED MAIL

KKK.   A prisoner who disagrees with the outcome of a hearing may file a grievance as set forth in PD 03.02.130 "Prisoner/Parolee Grievances." If the publication was referred to the CFA Deputy Director or designee for a final determination pursuant to Paragraph GGG, however, the grievance should not be filed until a final determination has been made.

LLL.   Within ten business days after the date of the Notice, the sender may appeal the proposed rejection by sending a letter to the Warden. An appeal received by any other facility staff shall be referred to the Warden as soon as possible. If the mail was referred to the CFA Deputy Director or designee pursuant to Paragraph GGG, the Warden shall not respond to the sender until a decision is made by the CFA Deputy Director or

| DOCUMENT TYPE | EFFECTIVE DATE | NUMBER | |
|---|---|---|---|
| POLICY DIRECTIVE | 08/01/2023 | 05.03.118 | PAGE 12 OF 13 |

designee.  If the mail was rejected because it was already on the Restricted Publications List, the sender's appeal shall be forwarded to the CFA Deputy Director or designee through the appropriate chain of command for review.  In all circumstances, the sender shall be notified in writing whether the appeal is granted or denied.  If the appeal is granted, that decision shall be noted on the Administrative Hearing Report and the mail promptly delivered to the prisoner.

### DISPOSITION OF REJECTED MAIL

MMM.  Prior to disposal, rejected mail shall be retained at the facility for at least 15 business days after the date of issuance of the Notice of Package/Mail Rejection or hearing, whichever is later.  However, if a publication was referred to the CFA Deputy Director or designee pursuant to Paragraph GGG, it shall be retained at the facility until a final decision is made by the CFA Deputy Director or designee. If the CFA Deputy Director or designee determines that the publication violates this policy, the publication shall be retained at the facility until the prisoner has exhausted the grievance process.  If the sender appeals the rejection, the mail shall not be disposed of until after a response to the appeal is sent.  If the mail violates state or federal law, it shall be turned over to appropriate law enforcement and only a copy retained.

NNN.  After retention for the period set forth in Paragraph MMM, rejected mail shall be disposed of by one of the following methods as determined by the hearings officer or as indicated by the prisoner on the Notice of Package/Mail Rejection if a hearing is not required pursuant to Paragraph BBB or III of this policy:

1. Returned to the sender at the prisoner's expense.  Funds shall not be loaned for this purpose.  If the prisoner does not have sufficient funds to pay the required postage, the mail may be destroyed no sooner than ten business days after the prisoner is notified in writing of this intent.—The mail shall be mailed out at the prisoner's expense during this ten-day period if the prisoner receives sufficient funds to pay the cost of the postage.

2. Mailed at the prisoner's expense to a person designated by the prisoner, except that the mail shall not be sent to another prisoner, a court, an identified public official, or a Department employee unless that employee or public official is related by blood or marriage to the prisoner. Funds shall not be loaned for this purpose.  If the prisoner does not have sufficient funds to pay the required postage, the mail may be destroyed no sooner than ten business days after the prisoner is notified in writing of this intent.  The mail shall be mailed out at the prisoner's expense during this ten-day period if the prisoner receives sufficient funds to pay the cost of the postage.

3. If the item is a photograph, book, or magazine, retained and stored by the facility for up to 30 calendar days for pick-up by a person designated by the prisoner.  If the mail is not picked up within 30 calendar days, it may be destroyed no sooner than ten business days after the prisoner is notified in writing of this intent.  The mail may be picked-up during this ten-day period.

4. If the item is the prisoner's original certified birth certificate, original Social Security card, original GED certificate or other official document that the prisoner may need upon release, retained in the prisoner's Record Office file until the prisoner paroles or discharges, at which time the documents shall be given to the prisoner.

5. Destroyed, except that a publication or photograph shall be destroyed only if the prisoner agrees or as allowed pursuant to nos. 1 through 3 above.  Documents identified in no. 4 above shall not be destroyed.

### PROCESSING OF MAIL

OOO.  Facilities shall endeavor to process all incoming and outgoing mail within two business day after receipt.  Mail received by any form of express mail or special delivery is not required to be expedited. Mail sent or received over holidays or weekends, and mail requiring special handling or foreign language summarization, may require additional time to process.  However, mail sent via disbursement to a court, an attorney, or a party to a lawsuit shall be processed consistent with the requirements set forth in Paragraph P.  Prisoners shall not be used to process mail.

| DOCUMENT TYPE | EFFECTIVE DATE | NUMBER | |
|---|---|---|---|
| POLICY DIRECTIVE | 08/01/2023 | 05.03.118 | PAGE 13 OF 13 |

PPP. Mail received for a prisoner who has transferred to another Department facility shall be returned unopened to the postal carrier that delivered the item. The new mailing address of the prisoner shall be provided to the carrier for at least two months after the transfer to allow for forwarding of the mail, when possible. Mail received for a prisoner in a secure hospital or in Duane L. Waters Health Center shall be forwarded to the prisoner. Mail, including legal mail, received for a prisoner in any other hospital setting shall be returned to the sender unopened. If an attorney subsequently contacts the facility indicating that the returned mail contains time-sensitive information, facility staff shall contact the CFA or FOA Deputy Director, as appropriate, for instructions how to proceed.

QQQ. Upon notification of parole or discharge, a prisoner must inform the mailroom supervisor in writing of their new address if the prisoner wants mail forwarded as set forth in Paragraph PPP. If a prisoner does not request that their mail be forwarded, any mail received for the prisoner shall be returned to the carrier for return to the sender or, if the carrier will not return the mail, for disposition in accordance with the carrier's regulations.

RRR. Mail received for a prisoner who has been released on court writ shall be returned to the carrier for return to the sender. If the carrier will not return the mail, for disposition in accordance with the carrier's regulations, unless the prisoner has made other arrangements in writing with the mailroom supervisor.

## PROCEDURES

SSS. If necessary, to implement requirements set forth in this policy directive, Wardens shall ensure that procedures are developed or updated.

## AUDIT ELEMENTS

TTT. A Primary Audit Elements List has been developed and is available on the Department's Document Access System (DAS) to assist with self-audit of this policy pursuant to PD 01.05.100 "Self-Audits and Performance Audits."

## ATTACHMENTS

UUU. This policy includes the following attachments:

1. Attachment A - Approved Internet Vendors

2. Attachment B - Authorized Vendors for Publications

APPROVED: HEW 07/19/2023

Joshua Levi Alger Sr. 0376096
Gus Harrison Correction Facility
2727 E. Beecher St.
Adrian, MI 49221

Clerk of the Court
Eastern District of Michigan
231 W. Lafayette Blvd
Detroit, MI
48226

US MARSHALS

UNITED STATES POSTAL SERVICE ®   pitney bowes

USPS TRACKING #

9488 8090 0027 6179 6086 82

Label 888-PB, Oct. 2015